UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL LEVESQUE,<br><br>    Plaintiff,<br><br>v.<br><br>RINCHEM COMPANY, INC., et al.,<br><br>    Defendants. | Case No. 5:14-cv-05655-PSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>(Re: Docket No. 9) |

In this employment discrimination case, Plaintiff Paul Levesque seeks rescission of a severance agreement that he entered into with Defendant Rinchem Company, Inc. Claiming he signed the agreement under economic duress, Levesque seeks to pursue his other claims of termination based on age, disability and religious discrimination, among others. Rinchem moves to dismiss the complaint in its entirety, arguing that there was no economic duress and that Levesque released his claims under the severance agreement. Because the court finds Levesque's allegations of economic duress insufficient, the motion to dismiss is GRANTED with leave to amend.

**I.**

This case is about a man who was laid off after twenty-three and a half years as a Rinchem employee.[1] Levesque was initially employed at Rinchem as a warehouse worker and driver and was promoted during his tenure until he was managing as many as four warehouses at a time.[2] He

---

[1] *See* Docket No. 1 at ¶ 8.

[2] *See id.* at ¶¶ 9-11.

1

Case No. 5:14-cv-05655-PSG
ORDER GRANTING MOTION TO DISMISS

regularly received positive evaluations until two months before his termination.[3] Just over a week before the termination, Levesque suffered an injury on the job—twisting his knee and tearing his rotator cuff.[4] He sought and received treatment for his injuries and worked out an arrangement with his supervisor to continue working during his recovery.[5] On September 25, 2013, Rinchem terminated Levesque as a part of a "reduction in force."[6] One month later, Levesque entered into a severance agreement with Rinchem in which Levesque received $42,562.50—23.5 weeks of salary—plus health insurance coverage through the end of the year in exchange for a release of all claims against Rinchem—a settlement that Levesque negotiated above and beyond Rinchem's initial offer.[7]

This suit followed. Levesque alleges that Rinchem was actually interested in promoting younger, Morman individuals over older, non-Morman individuals, such as himself.[8] He further alleges that he was terminated as a result of his injury and that he only entered into the agreement as a result of severe economic duress.[9] Levesque alleges eight causes of action in his complaint: (1) wrongful termination in violation of public policy; (2) age discrimination in violation of the Fair Employment and Housing Act; (3) disability discrimination in violation of FEHA; (4) medical condition discrimination in violation of FEHA; (5) religious discrimination in violation of FEHA; (6) wrongful termination in violation of public policy; (7) rescission of settlement agreement pursuant to Civ. Code § 1689 and (8) declaratory relief.[10] Rinchem now moves to dismiss all eight claims.

---

[3] *See id.* at ¶ 12.

[4] *See id.* at ¶¶ 16-19.

[5] *See id.* at ¶ 18.

[6] *See id.* at ¶ 19.

[7] *See* Docket No. 1-1.

[8] *See* Docket No. 1 at ¶¶ 14-16, 19.

[9] *See id.* at ¶¶ 16-20.

[10] *See* Docket No. 1.

2
Case No. 5:14-cv-05655-PSG
ORDER GRANTING MOTION TO DISMISS

**II.**

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. The parties further consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[11]

Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[12] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[13] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] Material properly submitted with the complaint may be considered as part of the complaint for purposes of a Rule 12(b)(6) motion to dismiss.[15] Against these standards, none of Levesque's claims pass muster.

**III.**

*First*, Levesque's claims—specifically claims one through six—are barred by the valid and enforceable contract that he entered into with Rinchem.[16] In order for a contract to be legally enforceable, there must be an offer, an acceptance, consideration and mutual assent.[17] An individual is presumed to have the capacity to enter into a contract unless he is wholly without understanding or judicially determined insane.[18]

---

[11] *See* Docket Nos. 7, 13.

[12] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[13] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[15] *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1989).

[16] As an initial matter, Rinchem points out that the Separation Agreement and Release is governed under New Mexico law. Because the court would reach the same result under either legal regime, it is unnecessary to determine which law properly governs.

[17] *See* Cal. Civ. Code § 1556; New Mexico Jury Instr. 13-801.

[18] *See* Cal. Civ. Code § 38; New Mexico Jury Instr. 13-837.

Mutual assent is shown by one party's offer, the other party's acceptance and communication of such acceptance to the offeror.[19] Here, Levesque admits that he "negotiated with [Rinchem] regarding the terms of his separation" and was able to secure more favorable terms than Richem had originally offered.[20] Both parties signed the agreement and Levesque accepted the lump sum payment due to him under the agreement.

Consideration is vital to contract formation.[21] "Consideration may consist of a return promise, an act, a forbearance, or the creation, modification, or destruction of a legal relation."[22] Under the terms of the agreement, "Employee shall receive the negotiated lump sum amount of the equivalent of 23.5 weeks of employee's salary: $42,562.50 . . . less all applicable federal, state and local taxes, deductions and withholdings."[23] Rinchem also agreed to pay the employer and employee portion of Levesque's health insurance premiums through December 31, 2013.[24] Levesque does not allege that Rinchem failed to follow through.

Significantly, Levesque does not allege that Rinchem breached the agreement, which suggests that he concedes that the contract is valid and enforceable.[25] Under the agreement, Levesque waived "any and all claims, known or unknown, arising out of EMPLOYEE'S employment and resignation thereof . . . [including] any and all claims under . . . the California Fair

---

[19] *See Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270-71 (2001); New Mexico Jury Instr. 13-801; Rest. 2d Contracts §§ 22(1), 23-24.

[20] Docket No. 1 at ¶ 21; *see* Docket No. 1-1 at 1 ("WHEREAS, EMPLOYEE has negotiated with RINCHEM regarding the terms of his separation and for additional pay and benefits above what was previously offered to him.").

[21] *See* Cal. Civ. Code § 1550; New Mexico Jury Instr. 13-801; Rest. 2d Contracts §§ 71-81.

[22] Cal. Civ. Code § 1605; New Mexico Jury Instr. 13-814.

[23] Docket No. 1-1 at 1.

[24] *See id.*

[25] *See San Mateo Union High School Dist. v. Cnty. of San Mateo*, 213 Cal. App. 4th 418, 439-40 (2013) (holding that a complaint that fails to properly allege breach of contract is deficient as a matter of law); *Wagner Equip. Co. v. Wood*, Case No. 11-cv-00466, 2012 U.S. Dist. LEXIS 39589, at *7-8 (D.N.M. Mar. 20, 2012) ("To state a claim for breach of contract under New Mexico law, a plaintiff must allege 'the existence of a contract, breach of the contract, causation, and damages.'" (quoting *Abreu v. N.M. Children, Youth & Families Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011))).

Employment and Housing Act . . . and all common law and other claims including, but not limited to, claims for wrongful or retaliatory discharge . . . [and] discrimination or harassment."[26] Claims one and six are for wrongful termination under the common law.[27] Claims two through five all arise under FEHA. Levesque waived all of these claims under the agreement.

*Second*, Levesque does not allege facts sufficient to support a rescission claim based on economic duress. Under New Mexico law, rescission is "an equitable remedy that results in the cancellation of a contract entered into through mistake, fraud, or duress."[28] Duress is "the intentional action by one person presenting such a serious business or financial loss or injury to the other person to the contract that he or she has no reasonable choice or alternative."[29] Under California law, "[a] party to a contract may rescind the contract in the following cases: [i]f the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or if any other party to the contract jointly interested with such party."[30] "Economic duress is an equitable doctrine which 'come[s] into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'"[31] "The doctrine of economic

---

[26] Docket No. 1-1 at 2.

[27] Levesque argues that because there is a LC 132A claim carve-out in the release, his wrongful termination claims are related to the LC 132A claim and thus also are exempted. But the language of the release clearly includes wrongful termination claims under the common law and excludes only "any LC 132A claim for the injury reported on 9/17/2013." Docket No. 1-1 at 2.

[28] *Branch v. Chamisa Dev. Corp.*, 147 N.M. 397, 401 (2009).

[29] New Mexico Jury Instr. 13-838.

[30] Cal. Civ. Code § 1689.

[31] *Johnson v. Int'l Bus. Machines Corp.*, 891 F. Supp. 522, 528-29 (N.D. Cal. June 1995) (quoting *Rich & Whillock, Inc. v. Ashton Dev. Inc.*, 157 Cal. App. 3d 1154, 1158 (1984)); *see also Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 469 (9th Cir. 1987) (holding that "economic duress occurs when a person subject to a wrongful act, such as a threat to withhold payment of an acknowledged debt, must succumb to the demands of the wrongdoer or else suffer financial ruin."); *Aikins v. Tosco Refining Co., Inc.*, Case No. 98-cv-00755, 1999 U.S. Dist. LEXIS 3994, at *7-8 (N.D. Cal. Mar. 29, 1999); New Mexico Jury Instr. 13-838; *Tierra Realty Trust LLC v. Village of Ruidoso*, 296 P.3d 500, 509-10 (2013).

duress serves as a 'last resort' to correct exploitation of business exigencies 'when conventional alternatives and remedies are unavailable.'"[32]

The parties quibble over whether *Johnson v. IBM* is distinguishable from the case at bar. In *Johnson*, IBM notified Johnson that he was laid off and offered Johnson a severance agreement in exchange for release of all claims.[33] Johnson accepted the agreement but later filed a lawsuit against IBM for race and age discrimination, simultaneously seeking rescission due to economic duress.[34] The agreement between Johnson and IBM contained terms that advised Johnson to consult with an attorney and confirmed that Johnson's assent was voluntary.[35]

In making a determination, the *Johnson* court identified a four-part test to find economic duress: "(i) that IBM [the defendant] engaged in a sufficiently coercive wrongful act such that; (ii) a reasonably prudent person in Johnson's economic position would have had no reasonable alternative but to succumb to IBM's coercion; (iii) IBM knew of Johnson's economic vulnerability; and (iv) IBM's coercive wrongful act actually caused or induced Johnson to endorse the Release."[36] The court denied Johnson's rescission claim, finding that Johnson was not facing imminent bankruptcy or financial ruin, that—while he subjectively may have believed he had no choice but to sign the release—objectively he had reasonable alternatives to signing the release, and that his "decision to endorse the [r]elease . . . was his own, made knowingly and freely after receiving advice of counsel" and absent "any untoward action on the part of IBM."[37]

At first blush, Levesque appears similarly situated to Johnson. Like Johnson, Levesque signed an agreement after he was terminated in which he agreed to release all claims against his former employer. Levesque distinguishes *Johnson* on two primary bases: (1) that Johnson was a

---

[32] *Johnson*, 891 F. Supp. at 529 (quoting *Rich & Whillock*, 157 Cal. App. 3d at 1159).

[33] *See id.* at 527.

[34] *See id.* at 524-25.

[35] *See id.* at 525-528.

[36] *Id.* at 527-28.

[37] *Id.* at 529-30.

6
Case No. 5:14-cv-05655-PSG
ORDER GRANTING MOTION TO DISMISS

well-educated computer engineer with ample job opportunities following his termination and (2) that Johnson had consulted an attorney about his discrimination claims prior to signing the release.[38] But for the purpose of rescission based on economic duress, these are distinctions without a difference.

Levesque does not allege that he had no other employment opportunities. He states that he was injured and ill but stops short of alleging that he was out of options.[39] Levesque further alleges that insurance payments for his treatments totaled over $32,000 per year, but he fails to identify what his out-of-pocket medical bills would have been following his termination.[40] Nor does Levesque specify whether he had other assets aside from the worker's compensation checks that he received every two weeks in the amount of $2,133.44.[41] While the court is sympathetic to Levesque's unfortunate position, his representation that he did not know how long he would continue receiving worker's compensation payments simply does not suggest the kind of threat of imminent bankruptcy or financial ruin required to allege economic duress.[42]

As to whether Levesque had the opportunity to consult an attorney before signing the release, Levesque readily admits in his complaint that he received legal advice from a worker's compensation attorney.[43] While Levesque questions this attorney's specific employment law experience, a worker's compensation attorney is still an attorney.[44] What is more, after receiving advice from this attorney, Levesque was able to negotiate a better deal for himself than what Rinchem had originally offered.[45] Finally, Levesque has not alleged that Rinchem coerced or

---

[38] *See* Docket No. 15 at 8.

[39] *See* Docket No. 1 at ¶ 20.

[40] *See* Docket No. 1 at ¶13.

[41] *See* Docket No. 15-2 at ¶ 3.

[42] *See id.*

[43] *See* Docket No. 1 at ¶ 21.

[44] Levesque's representation that he was not able to afford an attorney to consult with him about his termination does not change the fact that he already had advice of his worker's compensation counsel. *See* Docket No. 15-2 at ¶ 5.

[45] *See* Docket No. 1-1 at 1.

7
Case No. 5:14-cv-05655-PSG
ORDER GRANTING MOTION TO DISMISS

threatened him to induce him to sign the release.  There simply are not enough facts alleged in the record to substantiate a claim for rescission under an economic duress theory.

### IV.

Because the court is not yet persuaded that amendment would be futile,[46] the motion to dismiss is GRANTED with leave to amend.  Levesque shall file any amended complaint within 21 days.

**SO ORDERED.**

Dated: April 13, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[46] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).