UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL LEVESQUE,<br><br>        Plaintiff,<br><br>v.<br><br>RINCHEM COMPANY, INC.,<br><br>        Defendant. | Case No. 14-cv-05655-PSG<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**(Re: Docket No. 27)** |

In this employment discrimination case, Plaintiff Paul Levesque asks the court to rescind a severance agreement that he entered into with Defendant Rinchem Company, Inc. Levesque filed suit to pursue claims that he was terminated based on his age, disability and religion, among others. On Rinchem's motion, the court dismissed Levesque's initial complaint, finding his allegations of economic duress insufficient, but the court granted him leave to amend.[1] Levesque duly filed an amended complaint, and Rinchem again moves to dismiss. Because the court finds that Levesque's complaint remains inadequate, the motion to dismiss is GRANTED, but with leave to amend.

**I.**

On September 25, 2013, Levesque was laid off after twenty-three and a half years as a Rinchem employee.[2] He started at Rinchem in 1990 as a warehouse worker and driver, and Rinchem promoted him throughout his tenure until he was managing as many as four warehouses

---

[1] *See* Docket No. 22.

[2] *See* Docket No. 23 at ¶¶ 15, 26.

1
Case No. 14-cv-05655-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

at a time.[3] He regularly received positive evaluations until two months before his termination.[4] Just over a week before the termination, Levesque suffered an injury on the job—twisting his knee and tearing his rotator cuff.[5] He sought and received treatment for his injuries and worked out an arrangement with his supervisor to continue working during his recovery.[6] A few days later, Rinchem terminated Levesque as a part of a "reduction in force."[7]

The stress of the firing exacerbated Levesque's preexisting Crohn's disease, preventing him from seeking other employment.[8] After Levesque's termination, his household income was still $3,133.29 per month, and Levesque received $2,133.44 every two weeks from worker's compensation.[9] But Levesque and his wife also had significant debts, including $76,000 in negative equity in their home; his monthly expenses were nearly $3,000, excluding his wife's expenses and the costs of his health care.[10] Levesque's annual treatment costs for Crohn's disease came to $150,000, and he could not afford the monthly premiums of $819.51 to retain the Rinchem health insurance plan.[11] Levesque felt that he and his wife faced imminent financial ruin and that they would be forced to declare bankruptcy once his worker's compensation payments ended.[12]

---

[3] See id. at ¶¶ 16-18.

[4] See id. at ¶ 19.

[5] See id. at ¶ 23.

[6] See id. at ¶¶ 24-25.

[7] Id. at ¶ 26.

[8] See id. at ¶¶ 20, 27, 32.

[9] See id. at ¶¶ 31, 34.

[10] See id. at ¶ 31.

[11] See id. at ¶ 30.

[12] See id. at ¶ 31, 36.

2
Case No. 14-cv-05655-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

In late October, Levesque entered into a severance agreement with Rinchem in which Levesque received $42,562.50—23.5 weeks of salary—plus health insurance coverage through the end of the year.[13] The agreement says that Levesque negotiated the settlement and that the payout he received was above and beyond Rinchem's initial offer.[14] In exchange, Levesque agreed to release all discrimination claims against Rinchem.[15]

Nevertheless, near the end of 2014, Levesque filed this suit. Levesque alleges that Rinchem was actually interested in promoting younger, Mormon individuals over older, non-Mormon individuals like Levesque.[16] He further alleges that he was terminated as a result of his injury and that he only entered into the agreement as a result of severe economic duress, coercion and fraud.[17] In both his original and his amended complaint, Levesque alleges essentially the same eight causes of action: (1) rescission of the settlement agreement; (2) wrongful termination in violation of public policy (retaliation for job injury and worker's compensation claim); (3) age discrimination in violation of the Fair Employment and Housing Act; (4) disability discrimination in violation of FEHA; (5) medical condition discrimination in violation of FEHA; (6) religious discrimination in violation of FEHA; (7) wrongful termination in violation of public policy (discrimination and retaliation) and (8) declaratory relief.[18] Rinchem moves to dismiss all eight claims for the second time.

**II.**

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. The parties further

---

[13] *See* Docket No. 23-1, Ex. 1 at 1.

[14] *See id.*

[15] *See id.* at 2.

[16] *See* Docket No. 23 at ¶ 22, 82.

[17] *See id.* at ¶¶ 43-46.

[18] *See id.* at ¶¶ 39-95.

consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[19]

### III.

Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[20]  If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[21]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22]  Material properly submitted with the complaint may be considered as part of the complaint for purposes of a Rule 12(b)(6) motion to dismiss.[23]  Against these standards, Levesque's amended complaint fares little better than his initial one.

*First*, Levesque still has not alleged facts sufficient to support a rescission claim, either under his previous argument of economic duress or his new theory of fraudulent inducement. Under New Mexico law,[24] rescission is "an equitable remedy that results in the cancellation of a contract entered into through mistake, fraud, or duress."[25]  Duress is the "intentional action by one person presenting such a serious business or financial loss or injury to the other person to the

---

[19] *See* Docket Nos. 7, 13.

[20] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[21] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[23] *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1989).

[24] Rinchem has argued that this case should be decided under New Mexico law.  *See* Docket No. 22 at 3 n.16.  Because the court would reach the same result under New Mexico or California law, it is unnecessary to determine which state's law governs.

[25] *Branch v. Chamisa Dev. Corp.*, 147 N.M. 397, 401 (2009).

contract that he or she has no reasonable choice or alternative."[26] "Under New Mexico law, the elements for fraudulent inducement are (1) a misrepresentation of fact or failure to disclose a material fact; where (2) the falsity was known to the maker or where the representation or concealment was reckless; (3) the maker acted with the intent to deceive and to induce the other party to act in reliance; and (4) the other party actually relied on the representation or concealment."[27]

Under California law, "[a] party to a contract may rescind the contract in the following cases: [i]f the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or if any other party to the contract jointly interested with such party."[28] "Economic duress is an equitable doctrine which 'come[s] into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'"[29] "The doctrine of economic duress serves as a 'last resort' to correct exploitation of business exigencies 'when conventional alternatives and remedies are unavailing.'"[30] As for fraud, the elements under California law include "(a) a misrepresentation (false representation, concealment,

---

[26] New Mexico Jury Instr. 13-838.

[27] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 994 (10th Cir. 1999) (citing *Lotspeich v. Golden Oil Co.*, 125 N.M. 365, 367 (Ct. App. 1998)).

[28] Cal. Civ. Code § 1689.

[29] *Johnson v. Int'l Bus. Machines Corp.*, 891 F. Supp. 522, 528-29 (N.D. Cal. 1995) (quoting *Rich & Whillock, Inc. v. Ashton Dev. Inc.*, 157 Cal. App. 3d 1154, 1158 (1984)); *see also Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 469 (9th Cir. 1987) (holding that "economic duress occurs when a person subject to a wrongful act, such as a threat to withhold payment of an acknowledged debt, must succumb to the demands of the wrongdoer or else suffer financial ruin"); *Aikins v. Tosco Refining Co., Inc.*, Case No. 98-cv-00755, 1999 U.S. Dist. LEXIS 3994, at *7-8 (N.D. Cal. Mar. 29, 1999); New Mexico Jury Instr. 13-838; *Tierra Realty Trust LLC v. Village of Ruidoso*, 296 P.3d 500, 509-10 (N.M. Ct. App. 2013).

[30] *Johnson*, 891 F. Supp. at 529 (quoting *Rich & Whillock*, 157 Cal. App. 3d at 1159).

or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage."[31] Fraudulent inducement is a subset of fraud that "occurs when the promisor knows what he is signing but his consent is induced by fraud."[32]

On the issue of economic duress, the most instructive case is *Johnson v. IBM*. In *Johnson*, IBM notified Johnson that he was laid off and offered Johnson a severance agreement in exchange for release of all claims.[33] Johnson accepted the agreement but later filed a lawsuit against IBM for race and age discrimination, simultaneously seeking rescission due to economic duress.[34] The agreement between Johnson and IBM contained terms that advised Johnson to consult with an attorney and confirmed that Johnson's assent was voluntary.[35] The court denied Johnson's rescission claim, finding that Johnson was not facing imminent bankruptcy or financial ruin, that—while he subjectively may have believed he had no choice but to sign the release— objectively he had reasonable alternatives to signing the release, and that his "decision to endorse the [r]elease . . . was his own, made knowingly and freely after receiving advice of counsel" and absent "any untoward action on the part of IBM."[36]

The court finds that Levesque's amended complaint still cannot support a claim for rescission due to economic duress. To be sure, Levesque has addressed several of the shortcomings of his initial complaint. For example, he now alleges that he had no other employment opportunities because of his injury and his illness. He also alleges the amounts of his impending medical expenses and his other assets.

---

[31] *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 906 (N.D. Cal. 2011) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).

[32] *Id.* (quoting *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996)).

[33] *Johnson*, 891 F. Supp. at 527.

[34] *See id.* at 524-25.

[35] *See id.* at 525-528.

[36] *Id.* at 529-30.

6
Case No. 14-cv-05655-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

But this more complete picture of Levesque's situation, as before, "simply does not suggest the kind of threat of imminent bankruptcy or financial ruin required to allege economic duress."[37] When negotiating the release, Levesque already had started receiving worker's compensation payments, and any risk of bankruptcy would only arise once those payments stopped.[38] Levesque's financial situation was precarious, but not so dire that he had no reasonable alternative but to agree to the settlement. In fact, Levesque signed the severance agreement nearly a month after his firing, and he was able to improve on Rinchem's initial proposal. These details contradict his claim that the atmosphere surrounding the negotiation was coercive. As in *Johnson*, for good or ill, Levesque's decision was his own.

Levesque urges the court to reject *Johnson* and instead apply the test from *Stroman v. West Coast Grocery Co.*[39] Stroman, the plaintiff and appellee, alleged that he had been denied a supervisory position because of his race.[40] After he had filed several discrimination complaints, Stroman and his employer agreed to a settlement in which he released all of his discrimination claims in exchange for unemployment benefits.[41] In deciding whether the agreement was enforceable, the Ninth Circuit focused on whether Stroman's waiver of his claims under FEHA was "voluntary, deliberate and informed."[42] It evaluated "the circumstances and conditions under which the release was executed," including "the clarity and lack of ambiguity of the agreement," "the plaintiff's education and business experience," "the presence of a noncoercive atmosphere for the execution of the release," and "whether the employee had the benefit of legal counsel."[43] The

---

[37] Docket No. 22 at 7.

[38] *See* Docket No. 23 at ¶ 35.

[39] 884 F.2d 458 (9th Cir. 1989).

[40] *See id.* at 459-60.

[41] *See id.* at 460.

[42] *Id.* at 462 (quoting *Salmeron v. United States*, 724 F.2d 1357, 1361 (9th Cir. 1983)).

7
Case No. 14-cv-05655-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

Ninth Circuit found that Stroman's waiver satisfied this standard, so it dismissed his claims.[44]

Using the *Stroman* test does not affect the result. First off, even within the *Stroman* framework, the factors above bear on the issue of whether the waiver was voluntary and, in particular, whether a coercive atmosphere affected the employee's decision. Those factors suggest that Levesque voluntarily released his claims. Moreover, at just four pages, the agreement between Levesque and Rinchem was short, and its terms were unambiguous.[45] Although Levesque did not have business experience or education, he had decades of experience at Rinchem, including at the management level. Levesque could not have failed to understand what he was agreeing to—and he does not allege such a failure. That he did not consult with a lawyer about his discrimination claims[46] does cut in favor of rescission, but by itself this factor is not determinative. Levesque's waiver of his claims was voluntary, deliberate and informed, and the separation agreement is enforceable.

Levesque's fraudulent inducement argument is similarly unconvincing. He alleges that Rinchem's director of human resources told him that the company was on the verge of bankruptcy, which played a part in inducing him to sign the agreement.[47] A plaintiff must plead an allegation

---

[43] *Id.* (quoting *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988); *Jones v. Taber*, 648 F.2d 1201, 1204 (9th Cir. 1981)).

[44] *See id.* at 462-63.

[45] *See* Docket No. 23-1, Ex. 1.

[46] *See* Docket No. 23 at ¶ 46. Rinchem points out that Levesque admitted in his initial complaint that he received legal advice from a worker's compensation attorney. *See* Docket No. 1 at ¶ 21. On a motion to dismiss, courts generally do not consider material outside the operative complaint, aside from certain limited exceptions. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "[T]he weight of federal authority suggests that previous complaints do not generally fall within those exceptions." *Santana v. State of Cal. Dep't of Corr. & Rehab.*, Case No. 09-cv-03226, 2010 WL 4176364, at *4 (N.D. Cal. Oct. 19, 2010). On a motion to dismiss Levesque's amended complaint, then, the court may not consider allegations made only in his initial complaint.

[47] *See* Docket No. 23 at ¶ 36.

of fraud with particularity,[48] and Levesque has failed to do so.  Levesque has not alleged that the statement was untrue, that the director knew it was untrue, that the director intended that Levesque rely on the statement or that Levesque did indeed rely on that statement in making his decision.  Thus, he has not made out a viable claim for fraudulent inducement.

*Second*, Levesque's wrongful termination claims remain barred by the valid and enforceable contract that he entered into with Rinchem.  In granting Rinchem's first motion to dismiss, the court found that the contract was enforceable and that Levesque had waived his right to bring these claims.[49]  Levesque has alleged no new facts that would change this analysis.  Absent rescission, these claims cannot survive—and the court has already found that rescission is not appropriate.  Claims 2 through 8 of Levesque's amended complaint are dismissed.

Rinchem's motion to dismiss is GRANTED.  Dismissal without leave to amend is only appropriate if it is clear that the complaint could not be saved by amendment such as after a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed."[50]  The court already has granted Levesque one opportunity to address the defects in his complaint, and his amended complaint has again fallen short.  Regardless, because it is not yet completely certain that further amendment would be futile, the court once again grants Levesque leave to amend.  Any further amended complaint shall be filed within 14 days.

**SO ORDERED.**

Dated: October 20, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[48] *See* Fed. R. Civ. P. 9(b).

[49] *See* Docket No. 22 at 3-5.

[50] *See Eminence Capital*, 316 F.3d at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).